IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-05-0053 |
| | § | |
| MOISES LUNA | § | (Civil Action No. H-07-3395) |
| | § | |

## MEMORANDUM AND ORDER

The defendant, Moises Luna, also known as Luna Moises, also known as Moses Luna, has filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (Doc. # 52). Luna, who challenges a sentence that he received for illegal re-entry into the United States following deportation, has also submitted a memorandum in support of his claims. (Doc. # 53). The Court has carefully reviewed all pertinent matters in this criminal case. Based on this review, the Court's clear recollection of the relevant proceedings, and the application of governing legal authorities, the Court **denies** the defendant's § 2255 motion and **dismisses** the corresponding civil action (H-07-3395) for the reasons set forth below.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

It was undisputed that Luna was deported from the United States to Mexico in 2000, following a series of state court criminal convictions in Harris County, Texas. Luna returned to the United States, only to be convicted of three additional criminal offenses in Harris County. Luna was deported to Mexico a second time in 2003. Luna returned to the United States again only to be arrested in Harris County in 2004. He was subsequently charged and

convicted of resisting arrest in that case. Federal authorities encountered Luna while he was in custody at the Harris County Jail as a result of those charges.

On February 8, 2005, a federal grand jury in this district returned an indictment against Luna, charging him with illegal re-entry into the United States after a previous deportation in violation of 8 U.S.C. § 1326. Luna entered a guilty plea to those charges, without a written plea agreement, on March 18, 2005. Subsequently, the Court instructed the Probation Department to prepare a presentence report (a "PSR") for the purpose of determining punishment under the United States Sentencing Guidelines.

Using the relevant Guideline for illegal re-entry into the United States, § 2L1.2, the Probation Department determined that Luna's base offense level was 8. Because Luna's criminal record showed that he had been deported following one or more convictions for burglary of a habitation in violation of Texas law,[1] the Probation Department determined that Luna's sentence was subject to a 16-level increase under § 2L1.2(b)(1)(a)(ii), because burglary of a habitation in Texas qualified as a "crime of violence." This enhancement increased Luna's base offense level of 8 to a total offense level of 24. The Probation Department recommended a 3-level decrease for Luna's acceptance of responsibility in pleading guilty. This reduced his total offense level to 21.

---

[1] In particular, Luna was convicted of burglary of a habitation in the 232nd District Court of Harris County, Texas, in cause numbers 775438 and 775430, and sentenced to five years' imprisonment. Luna has another conviction for burglary of a habitation from the 103rd District Court of Cameron County, Texas, in cause number 96-CR-575-D. Luna received a ten year suspended sentence in that case, but he eventually received a five year prison sentence after his probation was revoked in 2002.

The Probation Department noted that Luna had an extensive criminal record, which resulted in at least 17 criminal history points and placed him in the highest Criminal History Category (VI). With his placement in Criminal History Category VI, Luna faced a range of imprisonment from anywhere between 77 to 96 months. A sentencing hearing commenced on June 10, 2005, but recessed to allow the parties to supplement the record with authority on whether Luna's prior conviction for burglary of a habitation qualified as a crime of violence for purposes of the 16-level enhancement. (Doc. # 43, *Sentencing Hearing*, June 10, 2005). After reviewing the supplemental briefing, exhibits, and argument by the parties at a hearing on July 25, 2005, the Court overruled Luna's objection to the 16-level enhancement and found that his prior Texas conviction for burglary of a habitation qualified as a crime of violence under § 2L1.2(b)(1)(a)(ii) of the Sentencing Guidelines. Noting that Luna first came to the United States at a young age, the Court granted his counsel's request for a downward departure based on cultural assimilation. (Doc. # 40, *Sentencing Hearing*, July 25, 2005, at 20-22). After considering the entire record, the Court sentenced Luna below the advisory Guideline range (77-96 months) to serve a total of 60 months in prison, followed by a term of three years on supervised release. (Doc. # 34).

On direct appeal, Luna challenged the 16-level enhancement to his sentence, arguing that this Court erred in treating his Texas conviction for burglary of a habitation as a crime of violence under § 2L1.2(b)(1)(a)(ii) of the Sentencing Guidelines. Luna argued further that the increase in sentence violated the United States Constitution, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because this fact was not found by a jury beyond a reasonable

doubt. The Fifth Circuit disagreed and affirmed the sentence in an unpublished opinion, noting that both of his arguments had been rejected previously and were foreclosed by existing precedent. *See Luna v. United States*, No. 05-20650 (5th Cir. Oct. 25, 2006) (per curiam). Luna did not appeal further by filing a petition for a writ of certiorari with the United States Supreme Court.

Luna now argues that he is entitled to relief from his sentence under 28 U.S.C. § 2255. Liberally construed, Luna argues that the Court improperly enhanced his sentence by 16-levels for his prior Texas conviction for burglary of a habitation in violation of *Apprendi*, *supra*, and *United States v. Booker*, 543 U.S. 220 (2005). Luna complains further that he was denied effective assistance of counsel at his sentencing. After reviewing the entire record, the Court concludes that the defendant is not entitled to relief under § 2255 for reasons discussed briefly below.

## II.  STANDARD OF REVIEW FOR SECTION 2255 MOTIONS

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a petitioner "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). "As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *Id.* Of course, this procedural

bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and not procedurally barred by a failure to raise them on direct appeal).

The defendant proceeds *pro se* in this matter. *Pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519 (1972). At the same time, however, *pro se* litigants are still required to provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

### III.  DISCUSSION

#### A.  Luna's Challenge to the Sentence Enhancement

Luna argues that his prior Texas conviction for burglary of a habitation does not qualify as a crime of violence and that this Court erred by enhancing his sentence by 16-levels under § 2L1.2(b)(1)(a)(ii) of the Sentencing Guidelines. Luna argues further that this Court improperly enhanced his sentence by 16-levels with a prior conviction for burglary of

a habitation because this fact was not found by a jury beyond a reasonable doubt. In support, Luna argues that the sentence enhancement violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *United States v. Booker*, 543 U.S. 220 (2005). The sentencing in this case took place in July of 2005, after *Booker* was decided. The record reflects that Luna raised a similar challenge to his sentence on direct appeal and his claim was rejected by the Fifth Circuit. *See Luna v. United States*, No. 05-20650 (5th Cir. Oct. 25, 2006) (per curiam). Because these claims were addressed on direct appeal, Luna may not re-litigate this issue on collateral review. *See United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986).

Even if not barred from reconsideration on collateral review, Luna's challenge to the use of his prior conviction as a sentencing factor remains foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998), and existing Fifth Circuit precedent. *See United States v. Garcia-Lopez*, 410 F.3d 268, 276 (5th Cir.), *cert. denied*, 546 U.S. 919 (2005).

Finally, as noted by the Fifth Circuit on Luna's direct appeal, in this circuit, conviction for "burglary of a habitation" under Texas law is equivalent to the enumerated crime of violence offense of "burglary of a dwelling" for purposes of the United States Sentencing Guidelines § 2L1.2, which governs the levels of enhancement for Guideline sentences for violation of § 1326(b). *United States v. Garcia-Mendez*, 420 F.3d 454, 456-57 (5th Cir. 2005), *cert. denied*, 546 U.S. 1199 (2006). *Accord, United States v. Valdez-Maltos*, 443 F.3d 910, 911 (5th Cir. 2006). In sum, Luna is not entitled to relief under 28 U.S.C. § 2255 from the 16-level enhancement imposed at sentencing.

**B.     Ineffective Assistance of Counsel**

Luna complains further that he was denied effective assistance of counsel at his sentencing. In particular, Luna claims that his attorney, Assistant Federal Public Defender Brent Newton was deficient for the following reasons: (1) Newton failed to secure a "fast track" plea bargain; and (2) he failed to request a downward departure based on Luna's status as a deportable alien.

Claims for ineffective assistance of counsel are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *See United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 687-88), *cert. denied*, 547 U.S. 1041 (2006). Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Molina-Uribe*, 429 F.3d at 518 (quoting *Strickland*, 466 U.S. at 689). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." *Id*. To prove prejudice as a result of counsel's alleged errors at sentencing, a § 2255 movant must show a reasonable probability that, absent counsel's errors, he would have received a lesser sentence. *United States v. Grammas*, 376 F.3d 433, 438-39 (5th Cir. 2004). The ineffective-assistance claims raised by Luna are discussed separately below.

### 1. Failure to Obtain a "Fast Track" Plea Bargain

Luna claims that Newton was ineffective because he could have ensured a reduced sentence by entering into a "fast track" plea bargain agreement with the government. In support, Luna relies on *United States v. Estrada-Plata*, 57 F.3d 757 (9th Cir. 1995), which outlines the fast-track policy in place in the Southern District of California. Luna claims that, had Newton requested a fast-track plea agreement from the government, Luna was willing to waive an indictment, to immediately enter a guilty plea "without the benefit of a presentence report," to waive his right to appeal the conviction and the sentence, to waive all downward departure arguments, and to consent to immediate deportation in exchange for a sentence of 30 months' imprisonment.

Fast-track programs are designed to conserve prosecutorial and judicial resources by offering reduced sentences in districts that are overburdened by illegal re-entry cases. *See United States v. Hernandez-Fierros*, 453 F.3d 309, 314 (6th Cir. 2006) (noting that fast-track programs are authorized "due [to] the unique and pressing problems related to immigration in certain districts"); *see also* Jane L. McClellan and Jon M. Sands, *Federal Sentencing Guidelines and the Policy Paradox of Early Disposition Programs: A Primer on "Fast-*

8

*Track" Sentences*, 38 ARIZ. ST. L. J. 517 (2006).  As illustrated in the case cited by Luna, the Southern District of California is one of the district courts on the Southwest Border that has adopted a fast-track program.  *See United States v. Estrada-Plata*, *supra*.  The Houston Division of the Southern District of Texas does not have such a program.

Because Luna was not arrested and charged with illegal re-entry in a district court that has an approved fast-track program in place, this type of plea agreement was not available to him.  Even if a fast-track program were in place here, it is not clear that Luna would be eligible for a reduced sentence in light of his extensive criminal history, which includes prior convictions for a crime of violence.  Luna therefore fails to show that his attorney was deficient for failing to secure a more favorable plea agreement.

Notably, Luna does not complain that his counsel was deficient for failing to request an additional reduction in sentence to avoid disparity between his punishment and other defendants who participate in a fast-track program.  Any contention that Luna's sentence is unreasonable because the illegal reentry guideline is unduly severe and because the absence of a fast-track program creates an unwarranted sentencing disparity is without merit.  The Fifth Circuit has consistently rejected these arguments as foreclosed by *United States v. Tzep-Mejia*, 461 F.3d 522, 527 (5th Cir. 2006) (holding that "*Booker* does not give sentencing courts the discretion to impose a non-Guideline sentence based on the courts' disagreement with Congressional and Sentencing Commission policy") and by *United States v. Aguirre-Villa*, 460 F.3d 681, 683 (5th Cir. 2006) (holding that a sentencing court's refusal to factor in the sentencing disparity caused by early disposition programs does not render a

sentence unreasonable), *cert. denied*, — U.S. — (June 29, 2007) (No. 06-7792). *See, e.g., United States v. Navarro*, 230 Fed. App'x 447, 2007 WL 1647872 (5th Cir. June 7, 2007) (rejecting claims by an illegal re-entry defendant that his sentence was unreasonable when compared with fast-track programs and that the disparity violates due process and equal protection).

To the extent that Luna claims he is prejudiced because he is not eligible for an early disposition program, he cannot show that he is similarly situated to fast-track defendants because, unlike other defendants who obtained the benefit of a fast-track sentence, Luna retained his right to appeal and he exercised that right. Even if Luna had requested a downward departure or variance to account for a disparity in sentence, this Court would not have granted a reduction on that basis under the circumstances present in this case because of Luna's lengthy criminal record. Therefore, Luna fails to show that his counsel was ineffective for failing to seek a sentence reduction on this issue.

### 2. Failure to Seek Downward Departure for Deportability

Luna contends further that Newton was deficient for failing to move for a downward departure at sentencing based on Luna's status as a deportable alien. Luna relies on two decisions involving drug convictions, in *United States v. Smith*, 27 F.3d 640 (D.C. Cir. 1994) and *United States v. Farouil*, 124 F.3d 838, 847 (7th Cir. 1997), for the proposition that a downward departure may be warranted where a defendant's "status as a deportable alien . . . resulted in unusual or exceptional hardship in his conditions of confinement." Both of these decisions are distinguishable from Luna's case, which involves charges of illegal re-entry

into the United States following deportation. In this context, the Fifth Circuit has recognized that a downward departure is not available because deportable alien status is an element of the offense, meaning that the defendant's "alienage was necessarily 'taken into consideration by the Sentencing Commission in formulating the guideline.'" *United States v. Garay*, 235 F.3d 230, 233 (5th Cir. 2000) (quoting *United States v. Gonzalez-Portillo*, 121 F.3d 1122, 1124-25 (7th Cir. 1997)), *cert. denied*, 532 U.S. 986 (2001); *see also United States v. Ebolum*, 72 F.3d 35, 38-39 (6th Cir. 1995) (holding that "deportable alien status may not be a basis for downward departure from a sentence imposed under a guideline that applies primarily to aliens who are deportable").

Because he was charged with illegal re-entry following deportation, Luna does not show that a downward departure based on alienage was available or appropriate. Therefore, Luna fails to demonstrate that his attorney was deficient for failing to move for an additional reduction in sentence. Likewise, even if Luna's attorney had asked for a downward departure based on Luna's status as a deportable alien, this Court would not have granted it in light of Luna's extensive criminal record. Thus, Luna cannot show prejudice and his ineffective-assistance claim fails.

In summary, Luna has not shown that his attorney was deficient at sentencing or that the result of his proceeding would have been any different but for his counsel's performance. Absent a showing of deficient performance and actual prejudice, Luna has not established that he was denied his constitutional right to effective assistance of counsel. *See United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001) (noting that, to prevail on an ineffective-

assistance claim, a movant must demonstrate that his counsel's performance was both deficient and prejudicial). Accordingly, he is not entitled to relief under 28 U.S.C. § 2255 on this issue.

## IV.   EVIDENTIARY HEARING

A motion brought under 28 U.S.C. § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the defendant is not entitled to relief. *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (*per curiam*) (citing *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980)). The record in this case is adequate to dispose fairly of the allegations made by the defendant. A district court need inquire no further on collateral review. Therefore, an evidentiary hearing is not necessary in this instance.

## V.   CERTIFICATE OF APPEALABILITY

The defendant's § 2255 motion is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, codified as amended at 28 U.S.C. § 2253. Thus, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After carefully considering the entire record of the criminal proceeding, the Court concludes that jurists of reason would not debate whether the movant has stated a valid claim or whether any procedural ruling in this case was correct.  Accordingly, a certificate of appealability will not issue.

## VI.     <u>CONCLUSION AND ORDER</u>

Because the defendant has failed to establish an error of constitutional or jurisdictional magnitude, he is not entitled to relief under 28 U.S.C. § 2255. Based on the foregoing, the Court **ORDERS** as follows:

1. The defendant's motion for appointment of counsel (Doc. # 51) is **DENIED**.

2. The defendant's pending § 2255 motion (Doc. # 52) is **DENIED** and the corresponding civil action (H-07-3395) is **DISMISSED** with prejudice.

3. A certificate of appealability from this decision is **DENIED**.

The Clerk will provide a copy of this order to the parties and will file a copy of this order with the docket in Civil Action No. H-07-3395.

SIGNED at Houston, Texas, on October 23, 2007.

_____
Nancy F. Atlas
United States District Judge